## CIRCUIT COURT OF THE CITY OF RICHMOND

Quaker Oats Co.

v.

Overnite Transportation Co.

May 1, 1989

Case No. LM-1794-3

By JUDGE RANDALL G. JOHNSON

This case was tried to the court, sitting without a jury, on April 7, 1989. The relevant facts are that in November, 1987, plaintiff contracted with defendant, Overnite Transportation Company, for Overnite to transport 24 palettes of "Cycle" and "Gravy Train" dog food from a warehouse in Chandler, Arizona, to a warehouse in Houston, Texas. Each palette contained 100 cases of dog food, with each case containing 18 cans. All of the product was in excellent condition when it left the warehouse in Arizona. Upon arrival in Houston, however, personnel at the receiving warehouse, which was not owned by the plaintiff, noticed that some of the cans were damaged, that the plastic covering which had been placed over the product was wet, that the labels and tops of some of the cans were wet, that the floor of the trailer was wet, and that some of the palettes were wet. Upon closer inspection, during which 12 of the 24 palettes were taken off of the trailer, water was found on each palette. It was also discovered that the canvas top of the trailer had a hole in it, and that water was dripping from the hole into the trailer.

After making his inspection, an employee of the Houston warehouse telephoned plaintiff's headquarters in Chicago

and reported his findings. Lawrence James, plaintiff's manager of Product Quality and Logistics, instructed the warehouse not to accept the shipment. James also called an official of Overnite and told him "the product is yours." Plaintiff now seeks to recover the value of its product, all of which it claims was rendered worthless by defendant's negligence.[1]

Overnite, for its part, does not vociferously contest its negligence. Indeed, the facts clearly establish that whatever damage occurred resulted from the negligence of Overnite. Moreover, it is well-settled that the law imposes upon a common carrier of goods an unusual and extraordinary liability. *See generally* 3B M.J., *Carriers*, sect. 12, and the cases there cited. Under the law, a carrier is a practical insurer of the goods entrusted to it and is liable for all losses, except such as arise by the acts of God, the public enemy, or the conduct of the owner, unless the loss or damage arises from the nature and inherent character of the property carried. *Id.* Thus, as a general proposition, Overnite is liable for all losses suffered by plaintiff here.

Overnite, argues, however, that plaintiff has waived its right to recover by refusing to accept delivery in Texas and by telling Overnite that "the product is yours." Indeed, while the court has been unable to locate a Virginia case on point, the law generally appears to be that the obligation of a consignee or owner to receive goods carried is not affected by the circumstances that they may have been injured or damaged during transit. So long as the goods retain a substantial value, the consignee or owner is bound to accept them and can hold the carrier responsible only for the actual damage. *See* 13 Am. Jur. 2d, *Carriers*,

---

[1] The motion for judgment seeks damages of $16,741.20. This amount is based on Plaintiff's Exhibit 4 which shows a total value of $23,916 for the 2,400 cases of product. According to Mr. James, a 30% salvage credit is always allowed for lost or destroyed merchandise, making the actual claim $16,741.20.

An examination of Plaintiff's Exhibit 4, however, reveals a mathematical error. One hundred cases of Cycle 3 chicken flavored dog food, at $7.52 per case, is shown to have a value of $7,520. The correct value is $752. Using this corrected figure, the total value of the shipment is $17,148. Again allowing the 30% salvage credit, plaintiff's total claim should be $12,003.60.

sect. 427. Contrary to Overnite's argument, however, even where a consignee or owner wrongfully refuses to accept delivery of goods from a carrier because of damage to them in transit, he may nevertheless recover from the carrier damages for the injury done to the goods. *Id.* Thus, the mere fact that plaintiff refused to accept delivery of the shipment in this case does not, by itself, preclude recovery. When that fact is considered with the other facts of this case, however, plaintiff's recovery is substantially reduced.

As previously stated, the general rule of law is that a consignee or owner has no right to refuse delivery of damaged goods which retain a substantial value. Here, the subject goods had a value of $17,148 which, when reduced by the salvage allowance uniformly applied by the plaintiff, rendered a claimed value of $12,003.60. The evidence showed that after plaintiff's refusal of delivery, Overnite, which is not in the business of selling dog food, sold nearly all of the product at public auction for $9,220, nearly 77% of the claimed value of the shipment, and over 50% of the "unreduced" value. The court finds that this price shows that the goods very definitely retained a substantial value at the time of delivery. Thus, plaintiff's recovery is limited to loss of value. By failing to accept delivery of the goods, however, plaintiff has lost any chance of proving what that lost value is.[2]

Again, it must be remembered that the product was not sold by plaintiff, which has established markets for its product and was in the best position to obtain the maximum price, but by Overnite, which has never been in the business of selling dog food. The court is unwilling to assign as the value of the dog food the price which

---

[2] Plaintiff's failure to accept delivery of the dog food was based on Mr. James's conclusion that once the shipment was exposed to moisture, the cans would rust and the product, though still viable and healthy, would be unattractive on store shelves. This, according to Mr. james, made the product worthless to Quaker. As already stated, however, Overnite's ability to sell the shipment for $9,220 very clearly shows that contrary to Quaker's assertion, the product did retain a substantial value.

Overnite obtained at public auction.[3] No other evidence was presented to show what the value of the product was at delivery. Since the burden is always on the plaintiff to prove damages, and since the diminution in value of plaintiff's product between the time of departure from Arizona and the time of delivery in Texas was not proved here, plaintiff may not recover for such damage. Moreover, by abandoning the product in Texas, plaintiff has also lost the right to claim the proceeds of the auction sale. Since plaintiff had no right to refuse delivery, it cannot now benefit from such refusal.

While the above holding applies to all of the product which was salvageable, it does not apply to product which was damaged to such an extent as to retain no substantial value. The evidence (Defendant's Exhibit 7) shows 63 cases of "Cycle" so damaged.[4] At $7.52 per case, those cases had a total value of $473.76. Allowing the 30% which plaintiff always allows for salvage, judgment will be entered for plaintiff in the amount of $331.63.

[3] Overnite's evidence was that its costs of transporting, storing, and selling the product after plaintiff's refusal exceeded the $9,220 obtained at auction. No counterclaim, however, was filed.

[4] For counsel's benefit, the damages cases were on skids 5 (5 cases), 6 (4 cases), 11 (1 case), and 16 (52 cases). Eighteen individual cans (skids 1, 7, 10, and 13), equalling one case, were also damaged.